FILED09 JUN'11 1344USDCORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

DALE G. WALDON,                              CV-10-6087-MA

       Plaintiff,                          OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

       Defendant.

RICHARD F. MCGINTY
McGinty & Belcher
P.O. Box 12806
Salem, OR 97301
(503) 371-9636

       Attorney for Plaintiff

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1003

1 - OPINION AND ORDER

DAVID F. MORANO
Regional Chief Counsel
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA  98104-7075
(206) 615-2680

      Attorneys for Defendant

MARSH, Judge.

     Plaintiff brings this action for judicial review of the Commissioner's March 18, 2010, final decision denying his November 5, 2004, applications for Disability Insurance benefits (DIB) pursuant to 42 U.S.C. §§ 401-34, and Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, Title II of the Social Security Act, 42 U.S.C. §§ 1381-83f.  He seeks an order from the court either remanding this matter for the immediate payment of DIB and SSI or for reconsideration of the evidence by the Commissioner.

     For the following reasons, I **REVERSE** the decision of the Commissioner and **REMAND** this matter for further proceedings as set forth herein.

**<u>BACKGROUND</u>**

     Plaintiff alleges he has been disabled since September 1, 2002, because of right shoulder, right leg, and left knee pain.

     On December 11, 2007, an administrative law judge (ALJ) held a hearing at which plaintiff, a physician, and a vocational expert testified.

2 - OPINION AND ORDER

On December 18, 2007, the ALJ issued a written decision that plaintiff is not capable of performing his past relevant work, but he is capable of performing light, unskilled work in jobs such as Electronic Assembler, Machine Operator, and Small Product Assembler.  On March 18, 2010, the Appeals Council denied plaintiff's request for review.  The ALJ's decision, therefore, is the final decision of the Commissioner for purposes of judicial review.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a plaintiff is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since September 1, 2002.

At Step Two, the ALJ found plaintiff has severe impairments from prior leg fractures and jaw injuries that impair his ability to perform basic work activities.  See 20 C.F.R. §§404.1520(c) and 416.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairments did not meet or equal a listed impairment. As such, the ALJ found plaintiff retains the residual functional capacity for light work involving lifting, pushing, and pulling up to 20 lbs occasionally and 10 lbs frequently, as well as occasional climbing, balancing, bending, kneeling, stooping, crouching, and crawling.

At Step Four, the ALJ found plaintiff is unable to perform his past relevant work as a janitor, construction laborer, warehouse laborer, saw operator, and grinder.

At Step Five, the ALJ found plaintiff is able to perform any tasks associated with light, unskilled jobs, such as Electronics Assembler, Machine Operator, and Small Product Assembler.

Based on these findings, the ALJ found plaintiff is not disabled and, accordingly, is not entitled to any benefits.

## LEGAL STANDARDS

The initial burden of proof rests on the plaintiff to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, the plaintiff must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The district court must affirm the Commissioner's final decision if it is based on proper legal standards and the ALJ's findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all the evidence whether it supports or detracts from the Commissioner's final decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The court must uphold the decision, however, even if it concludes that evidence "is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000).  "If additional proceedings

can remedy defects in the original administrative proceeding, a
social security case should be remanded."  Lewin v. Schweiker,
654 F.2d 631, 635 (9th Cir. 1981).

### ISSUES ON REVIEW

The issues are whether the ALJ erred by (1) failing to
credit plaintiff's evidence regarding the severity of his
impairments; (2) failing to give germane reasons for discounting
the lay testimony of plaintiff's sister-in-law; (3) failing to
give clear and convincing reasons for not crediting the medical
opinion of treating and examining physicians, (4) failing to
consider evidence from a nurse practitioner, and  (5) failing to
consider all of plaintiff's functional limitations resulting
from his impairments.

### EVIDENCE

The evidence is drawn from testimony at the December 11,
2007, hearing, plaintiff's application for benefits and his work
history report, a lay witness function report, and the medical
records included in the Administrative Record.

**Plaintiff's Evidence.**

On the date of the hearing, plaintiff was 53 years old.
He has a 12th grade education.  Plaintiff served a ten month term
of imprisonment from November 2003 to September 2004 following
a theft conviction.  During his incarceration, he worked as a
janitor 45 minutes a day, five days a week.

6 - OPINION AND ORDER

Previous Employment.

Plaintiff worked from July 1999 to September 2002 selling spas in a retail store.  He began as a grinder and jet setter and later performed janitorial work.  He was laid off because he needed a jaw operation.  Before that, his full-time employment, in reverse chronological order, included building maintenance, general construction, freezer operations in a frozen fruit packaging plant, saw operator, roofer, forklift driver, and part-time psychiatric aide helper.

Daily Activities.

Plaintiff spends about two hours a day, in 15-20 minute intervals, cooking and cleaning house.  He reads, listens to the radio and watches a small amount of television.

Plaintiff usually rides the bus but occasionally rides a bicycle once or twice a week if the weather is pleasant.

He is able to mow the lawn if he takes regular breaks.  In the summer, he regularly walks to and from the grocery store.

Physical Impairments/Limitations.

Plaintiff has pain and swelling in his leg, hip, left knee, and right ankle.  His leg pain increases during the course of the day.  He is able to stand and walk for about 15-20 minutes. He then needs to sit in a recliner with his leg elevated for "an hour or so" to help the circulation in his lower right leg.

Plaintiff also has pain from his low back to his hips.

Plaintiff is able to raise his left arm to shoulder level only.  His right shoulder becomes sore when he performs repetitious work such as lifting more than 5-10 lbs and after using tools.

Plaintiff also fractured his left hand, which "bothers" him from time to time.  He is right-handed.

Plaintiff has had prior jaw surgery that makes it difficult for him to speak clearly.  In 2006, he had follow-up surgery to replace a broken plate placed in his jaw in the original surgery.

Plaintiff has had a bone infection in his right hip, resulting in flesh removal surgery.  He has "a lot of pain" in that area and in his low back, and his hip aches when he sits.

Plaintiff is prescribed pain medication including methadone, which he takes twice a day, and oxycodone, which he takes in the morning.  The methadone makes him sleepy, causing him to doze off for up to 15-20 minutes.

Plaintiff's physician tapered him off pain medication after he tested positive for marijuana, which he no longer uses.

**Lay Witness Evidence**.

Plaintiff's sister-in-law, Patricia Walden, submitted a Function Report listing plaintiff's daily activities and physical limitations.  She stated he does light housework but he is unable to stand for more than 30 minutes.  He is unable to do yard work.  He "has to take naps because his back, ribs, and feet

cause him extreme pain" and "he falls down frequently because his legs are crippled." In her opinion, he has neither the motor skills nor the stamina to work.

Plaintiff spends up to 30 minutes at a time shopping for groceries, preparing simple meals, washing the dishes, and doing light laundry. His recreational activities include reading, listening to music, and watching television.

Plaintiff has limited ability to lift, squat, bend, stand, reach, kneel, climb stairs, and complete tasks. He is capable of lifting up to 20 lbs and walking up to one mile before he needs to rest for up to 45 minutes. He has no difficulty paying attention, handling stress and changes in his routine, following written and spoken instructions, or completing tasks.

Plaintiff wears a prescribed 3/4" shoe lift on his right shoe to help him walk. While he was in prison, he developed nerve damage in his right leg that aggravated his right leg pain. "His ribs, hip, back, legs, and feet cause him to fall and have to take several naps every day."

**Medical Evidence - Treatment**.

Meridian Park Hospital.

In March 1983, plaintiff was treated for a closed displaced fracture of the distal tibia and fibula in his right leg after he was struck by a hit-and-run driver. By November 1983, the fractures had healed. He was released for work in March 1984.

9 - OPINION AND ORDER

<u>J. Mark Roberts, M.D. - Orthopedic Surgeon</u>.

From June 1989 to May 1990, Dr. Roberts treated plaintiff, and performed an open reduction and bone grafting of plaintiff's right tibia and fibula, which had refractured after he twisted his leg.

<u>Rodney K. Beals, M.D.- Orthopedic Surgeon</u>.

In August 1990, Dr. Beals also treated plaintiff for the fracture in his right leg, noting the fractures were healing.

By November 1990, however, plaintiff continued to have "gross fracture movement" and underwent a closed reduction and casting of the right tibia.

In January 1991, plaintiff had good ankle motion and "some progression of his healing" of the fractures.

In March 1991, plaintiff's fibula had healed but there was evidence of motion at the fracture site.

In July 1991, plaintiff was complaining of increased pain, and the fracture line in the tibia was clearly visible.

In August 1991, plaintiff underwent a bone graft using bone from the iliac crest of his right hip.  The hip wound then became infected, requiring a surgical drainage operation.

By February 1992, plaintiff's hip wound was much improved.

By September 1992, x-rays showed plaintiff's tibia had healed but his right leg was one-half inch shorter than his left leg and he walked with a slight limp.

Eric Horton, M.D. - Orthopedic Surgeon.

In July 1997, plaintiff fell at work, fracturing the ring finger on his left hand. He was placed in a short arm cast, and was returned to light duty work.

By October 1997, the fracture had fully healed and plaintiff was returned to work without restriction as of November 1, 1997.

Salem Hospital Emergency Room.

In January 2002, plaintiff was treated for a fractured jaw following an assault. He was prescribed Demerol for pain. The next day, he had surgery to reduce fractures on the right and left side of his jaw. A plate was inserted in his jaw.

In September 2002, plaintiff had follow-up surgery on his "infected, nonunion, atrophic" left jaw.

Oregon Health Sciences University.

Between August and November 2005, plaintiff was treated again for "nonunion or failed union" of his 2002 left jaw fracture. He had undergone two failed jaw reconstructions since 2002. A large reconstruction plate was inserted in his jaw to stabilize the fracture and a bone graft was used to reconstruct the jaw nonunion. After the procedure, plaintiff reported he was doing well with little pain and no complications.

West Salem Clinic - Wendy Oran, M.D., and Mark Corey, FNP.

In December 2004, x-rays showed mild degenerative arthritis in plaintiff's knees.

11 - OPINION AND ORDER

From January 2005 to October 2007, plaintiff was seen on a monthly basis, primarily for the purpose of refilling pain medications prescribed to treat chronic pain in plaintiff's left shoulder, low back, knee, right hip, and right lower extremity. In May 2007, plaintiff injured his left shoulder when he fell off his bicycle. An x-ray did not show a fracture and his pain level decreased. He had good range of motion in his shoulder. He was told to avoid lifting more than 20 lbs for three weeks.

In July 2007, plaintiff reported his pain medications were helpful, but he continued to have shoulder pain.

**Medical Evidence - Examination**.

J. David Hook, M.D. - Physical Rehabilitation Medicine.

In January 2005, Dr. Hook examined plaintiff for complaints of pain in his right shoulder, right leg pain, and left knee. Dr. Hook noted plaintiff's past leg fracture and hip weakness, as well as nonspecific right shoulder pain, and weakness in his right hip. He opined that plaintiff could stand and move about for fours and sit for six hours each day. Plaintiff is likely to have more degenerative change in the right ankle if he lifts and carries more than 20 lbs occasionally and 10 lbs frequently. Within the above range, plaintiff is able to frequently climb, balance, stoop, bend, kneel, and crawl. Plaintiff should not crouch or squat.

12 - OPINION AND ORDER

Dr. Hook opined the above range of motion limitations were valid as to plaintiff's right shoulder, left knee, right ankle, and low back, but other limitations were likely the result of deconditioning.  Dr. Hook, however, also opined that plaintiff's limitations prevented him from working.

Diane Joyner - Occupational Therapist.

At the request of plaintiff's attorneys, therapist Diane Joyner performed several tests relating to plaintiff's functional capacity.  She opined he has the ability to lift and carry 15 lbs for 40 feet with both hands, and to carry 20 lbs in a bucket for 40 feet.  He is able to push 25 lbs for 20 feet and static pull 32 pounds.  He is also able to perform light repetitive work for material and nonmaterial handling tasks at waist and chest level. He has the ability to climb a ladder or stairs intermittently. As such, Joyner opined plaintiff is able to perform sedentary to light work

**Medical Evidence - Consultation**.

Martin Lahr, M.D. - Pediatrician.

Dr. Lahr reviewed plaintiff's medical records on behalf of the Commissioner and opined plaintiff's allegations regarding his physical limitations were partially credible.  Based on his review of the medical records, Dr. Lahr opined plaintiff retains the residual functional capacity to lift 20 lbs occasionally and 10 lbs frequently, to stand, walk and/or sit for 6 hours in an

eight-hour workday, and to push and pull on an unlimited basis. Plaintiff is able to climb, balance, stoop, kneel, crouch, and/or crawl occasionally.

David Rullman, M.D. - Internal Medicine.

Dr. Rullman testified at the hearing that he had reviewed plaintiff's relevant medical records and opined that plaintiff's leg and jaw fractures "healed effectively," showing "minimal changes" that would be similar to what average persons of plaintiff's age might experience if they exhibited plaintiff's symptoms. Although he acknowledged he was "conservative," Dr. Rullman found it unusual for plaintiff to take methadone for pain relief. Nevertheless, he found no evidence of drug-seeking behavior in the medical record.

Dr. Rullman opined that plaintiff could perform light work under the "usual" Social Security definition of that term.

**ANALYSIS**

1.   **Failure to Credit Plaintiff's Testimony**.

The ALJ found plaintiff's impairments "could reasonably be expected to produce the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."

Plaintiff contends the ALJ failed to give clear and convincing reasons for not crediting his testimony regarding the severity of his physical impairments. I agree.

14 - OPINION AND ORDER

A plaintiff who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The plaintiff need not produce objective medical evidence of the symptoms or their severity. Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the plaintiff produces objective evidence that underlying impairments could cause the pain complained of and there is not any affirmative evidence to suggest the plaintiff is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283.  To determine whether the plaintiff's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the plaintiff's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the plaintiff that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the plaintiff's daily activities. Id. at 1284 (citations omitted).

15 - OPINION AND ORDER

Here, there is no evidence that plaintiff is a malingerer.
Moreover, plaintiff produced substantial objective medical
evidence of his pain complaints, specifically relating to the
fracture and lengthy healing process of his right leg, the need
for bones grafts from his right hip to aid healing of the leg,
and the fracture of his jaw in multiple places, which required
the insertion of a plate.

The medical record also amply reflects plaintiff received
appropriate pain medication on a regular and sustained basis
under the supervision of Dr. Oran through the date he filed the
claim now under review.  Dr. Oran's medical reports do not
reflect a significant concern that plaintiff was either
exaggerating his need for the pain medication or that he was
abusing it.  Moreover, Dr. Rullman testified that, based on his
review of the entire medical record, he found no evidence of drug
seeking behavior.

In partially rejecting plaintiff's testimony, the ALJ stated
his activities of daily living "are rather full from a physical
stand point, undermining the degree of pain and limitations
claimed by him at the hearing."  The ALJ's examples of such
activities, including mowing the lawn, bicycling, riding buses,
and walking one-half mile to the store and back with groceries do
not justify or support that statement.  Plaintiff testified he
can mow the lawn if he takes regular breaks.  He can walk a mile

16 - OPINION AND ORDER

in 45 minutes.  He rides a bicycle occasionally if the weather is nice, and he does indeed ride the bus.  On this record, and in light of the objective medical evidence as a whole, the court concludes none of plaintiff's acknowledged physical activities undermine his credibility regarding either the severity of his pain complaints, or his potential lack of ability to work.

On this record, therefore, the court concludes the ALJ did not give clear and convincing reasons for failing to credit plaintiff's testimony and statements regarding the severity of his pain complaints and their impact on his ability to engage in substantial gainful activity.

2.    **Failure to Credit Lay Witness Evidence**.

Plaintiff contends the ALJ failed to give germane reasons for not crediting lay witness evidence of plaintiff's sister-in-law that plaintiff was unable to do yard work.  I disagree.

Lay witness evidence as to a plaintiff's symptoms "is competent evidence that an ALJ must take into account" unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ rejected evidence from plaintiff's sister-in-law that plaintiff was unable to do yard work because plaintiff testified he is able to mow the lawn.  That was a germane reason for the ALJ not to fully credit that specific lay evidence.

17 - OPINION AND ORDER

3.   **Failure to Credit Treating Physicians' Opinions**.

Plaintiff contends the ALJ erred in not giving appropriate weight to medical reports of treating physician Wendy Oran, M.D., and treating Nurse Practitioner Mark Corey F.N.P., both of whom documented that plaintiff suffers from chronic pain.   I agree.

An ALJ may reject the uncontroverted opinion of a treating physician only by stating clear and convincing reasons that are supported by substantial evidence in the record.   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(as amended).   An ALJ also may disregard the controverted opinion of a treating physician only by setting forth specific and legitimate reasons that are supported by substantial evidence in the record. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

The weight given to opinions from other sources such as nurse practitioners depends on the facts of each case.   Soc. Sec. Ruling 06-3p.

Dr. Oran and Nurse Practitioner Corey treated plaintiff from November 2004 to March 2007.   Each of them repeatedly diagnosed "chronic pain" but neither offered specific assessments of plaintiff's functional limitations.   On one occasion, Dr. Oran advised plaintiff not to lift more than 20 lbs, which is a limitation consistent with the ability to perform light work.

Based on that advice, the ALJ concluded plaintiff "had a full recovery from his left shoulder injury."   The ALJ then

broadly stated that Dr. Oran's opinion as to the extent of
plaintiff's recovery from his shoulder injuries "substantiate[d]"
Dr. Rullman's nondisability opinion as a whole.  Dr. Oran,
however, did not address plaintiff's workplace limitations
arising from his undisputed left knee and leg pain.

On this record, the court concludes the ALJ erred in basing
his nondisability finding on Dr. Oran's opinion as to plaintiff's
recovery from his shoulder injuries, which did not take into
account potential workplace limitations caused by plaintiff's
pain elsewhere, particularly in his left hip, leg, and knee.

4.    **Failure to Credit Examining Physician's Opinion**.

Plaintiff contends the ALJ did not give sufficient weight to
examining physician Dr. Hook's opinion that the range of motion
in plaintiff's right shoulder, left knee, right ankle, and low
back was limited, and that such limitations "would appear" to
prevent him from working because he is able to lift or carry less
than 10 lbs occasionally and is limited in reaching, handling,
and grasping with his right hand.  I agree.

"The opinion of an examining physician is entitled to
greater weight than the opinion of a nonexamining physician."
Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  "As is the
case with the opinion of a treating physician, the Commissioner
must provide clear and convincing reasons for rejecting the
uncontradicted opinion of an examining physician."  Id.

19 - OPINION AND ORDER

The Commissioner contends Dr. Hook's opinion "reflected the nature of Plaintiff's complaints, not necessarily the actual clinical findings," and in any event, Dr. Hook "is not a vocational expert and thus lacks expertise to determine whether an individual with any limitations would be able to find work."

Dr. Hook, however, did not offer an opinion on plaintiff's ability to "find" work.  His opinion was focused on plaintiff's ability to work based on his physical impairments.  That is plainly a role specifically assigned to an examining physician in a social security disability case.  The ALJ gave no good reason to reject that opinion.

### NATURE OF REMAND

Based on the above, the court concludes this matter must be remanded to the Commissioner.  Whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

The court notes Dr. Oran and Nurse Practitioner Corey most recently treated plaintiff for chronic pain, and that treatment spanned more than three years.  Dr. Oran, however, did not offer an opinion as to plaintiff's ability to engage in substantial

gainful activity in light of his pain complaints.  Moreover,
although she opined as to plaintiff's lifting ability, Dr. Oran
did not address physical limitations related to plaintiff's pain
complaints in his hip or lower left extremities.  The court
concludes an opinion from Dr. Oran regarding plaintiff's ability
to engage in substantial gainful activity taking into account all
the physical impairments for which plaintiff was treated while
under her care, including those impairments related to his hip
and lower extremities, would serve the most useful purpose of the
remand.

### CONCLUSION

For these reasons, the court **REVERSES** the decision of the
Commissioner and **REMANDS** this matter pursuant to Sentence Four of
42 U.S.C. § 405(g) for further proceedings as set forth above.

IT IS SO ORDERED.

DATED this 8 day of June, 2011.


_Malcolm F Marsh_
MALCOLM F. MARSH
United States District Judge


21 - OPINION AND ORDER